UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CLARENCE MATTHEW OTWORTH,

       Plaintiff,                              Case No. 1:18-cv-625

v.                                              Hon. Robert J. Jonker

PNC BANK,

       Defendant.

                                     /

**REPORT AND RECOMMENDATION**

This matter is now before the Court on defendant's motion to dismiss (ECF No. 4) and plaintiff's motion for default judgment (ECF No. 6).

      **I.**        **Plaintiff's claims**

*Pro se* plaintiff Clarence Matthew Otworth set forth the following the allegations in his complaint. *See* Compl. (ECF No. 1, PageID.1-3). Plaintiff is a retired railroad conductor residing in Muskegon County, Michigan. He has a checking account with defendant PNC Bank ("PNC"). Plaintiff receives a disability check from the Railroad Retirement Board on the first day of each month which is automatically deposited into his PNC checking account. Plaintiff is in a wheelchair and "cannot travel to the bank because he cannot walk." Plaintiff has a worker (aide) who assists him for two hours on Wednesdays. It has been plaintiff's past practice to write the aide a check. Then, the aide cashes the check and buys him food. Plaintiff learned in March 2018 that as of April 23, 2018, PNC "will start charging non-customers a check cashing fee of 2% of the check." Plaintiff's aide does not have a PNC account. Therefore, plaintiff must pay "the non-

1

customer check cashing fee if [plaintiff] wants to get his money out of the bank and buy food." Plaintiff contends that this constitutes the felony of "Theft by Deception."

On March 21, 2018 (before PNC implemented the new policy), plaintiff wrote a check payable to himself, endorsed it, and gave it to the aide to deliver to the bank along with a letter of introduction stating that "Clarence Otworth was cashing his check, not [the aide]." PNC refused to cash the check. Plaintiff alleged that he has constitutionally protected property interest in his deposits at PNC and that he was denied that property interest without due process of law. Plaintiff demands judgment against PNC for $1,000,000.00.

##   II.    Plaintiff's motion for default judgment

After defendant moved to dismiss the complaint, plaintiff filed a motion for entry of default judgment in the amount of $1,000,000.00. *See* Motion for default judgment (ECF No. 6). Plaintiff's motion is meritless.

> Obtaining a default judgment is a two-step process: (1) the party seeking a default judgment first files a motion for entry of default by demonstrating that the opposing party has failed to answer or otherwise respond to the complaint, and (2) once the clerk has entered a default, the moving party may then seek entry of a default judgment against the defaulting party

*Disney Enterprises v. Farmer*, 427 F. Supp. 2d 807, 814 (E.D. Tenn. 2006). To accomplish the first step, Fed. R. Civ. P. 55(a) requires the clerk to enter a default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise[.]"

Here, there was no basis for the clerk to enter a default against PNC pursuant to Fed. R. Civ. P. 55(a). Plaintiff filed the case on June 5, 2018 but did not provide the Court with a summons. The record reflects that the Court issued a summons for PNC on June 22, 2008. The record also contains the returns for two different summonses. One summons was served on PNC

by Lyle Grover [?] on June 19, 2018.  *See* Proof of Service (ECF No. 6-1).  A copy of the proof of service was attached to plaintiff's motion for entry of default judgment.  This "summons" was not issued by the Court.

On July 30, 2018, Brad Siegfried served a summons on PNC.  *See* Proof of Service (ECF No. 5).  It appears that PNC became aware of plaintiff's lawsuit prior to this date, because Attorney Jason M. Renner entered his appearance on July 24, 2018, the same date that PNC moved to dismiss the lawsuit.  Plaintiff filed his motion for entry of default judgment on August 22, 2018, almost one month after PNC filed its motion to dismiss. In short, there was no default.  Accordingly, plaintiff's motion for default judgment (ECF No. 6) should be denied.

### III.    Defendant's motion to dismiss

#### A.    Legal Standard

Defendant has moved to dismiss plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6).  A complaint may be dismissed for failure to state a claim if it fails to give the defendants a fair notice of the claim and the grounds upon which it rests.  *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007).

> [A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotation marks omitted).

In making this determination, the complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true.  *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).  However, "an unadorned, the - defendant -

unlawfully - harmed - me accusation" is insufficient to state a claim for relief.  *See Iqbal*, 556 U.S. at 678.  In this regard, while *pro se* pleadings are to be liberally construed, *see Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011), "this court is not required to conjure up unpled allegations." *Dietz v. Sanders*, 100 Fed. Appx. 334, 338 (6th Cir. 2004).

Plaintiff filed this complaint under the Court's federal question jurisdiction, 28 U.S.C. § 1331, which provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  Plaintiff's complaint includes a federal and a state claim.  In his federal claim, plaintiff alleged that PNC violated his rights under the due process clause of the Fourteenth Amendment, which provides in part that no state shall "deprive any person of life, liberty, or property, without due process of law."  In his state law claim, plaintiff alleged that PNC committed the crime of "theft by deception."  The Court construes this claim as alleging a state law tort for "theft by deception."

**B.     Discussion**

**1.     Plaintiff's due process claims**

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law."  *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir. 2004).  To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law.  *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

As an initial matter, plaintiff has not alleged any cause of action related to PNC's 2% check cashing fee which went into effect on April 23, 2018.  Although plaintiff filed this

action on June 4, 2018, some weeks after the policy change, he did not allege that he suffered any injury from the new policy.

Plaintiff's only claim involves the March 21, 2018 incident in which PNC refused to allow his aide to cash a check payable to him. Plaintiff's federal constitutional claim appears to be that PNC deprived him of his property interest in his funds placed in the bank account by failing or refusing to cash the check. Plaintiff's claim is without merit.

> In order to assert a § 1983 civil rights claim, a plaintiff must allege and prove that a person acting under color of state law deprived him of a right secured by the federal Constitution or laws of the United States. 42 U.S.C. § 1983; *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir.1991). Moreover, the protections afforded to citizens by the Fourth and Fourteenth Amendments apply only to state or governmental action as well. *Mays v. Buckeye Rural Elec. Coop.*, 277 F.3d 873, 880 (6th Cir.2002); *Bills v. Aseltine*, 958 F.2d 697, 703 (6th Cir.1992).

*Daniels v. Charter One Bank*, 39 Fed. Appx. 223, 225 (6th Cir. 2002). Plaintiff cannot state a § 1983 claim against PNC because the bank is not a state actor under the statute. *See id.* (court determined that the bank was not a state actor subject to liability under § 1983 when the bank failed to honor the plaintiff's stop payment order and charged him additional fees when the plaintiff had insufficient funds in the account to cover the check). *See also Wellman v. PNC Bank*, 508 Fed. Appx. 440, 442 (6th Cir. 2012) (district court properly held that a bank was not a state actor for purposes of § 1983). Accordingly, plaintiff's § 1983 claim should be dismissed.

    **2.**    **New claims asserted in plaintiff's reply**

In his reply, plaintiff makes brief references to the Civil Rights Act of 1964, the Rehabilitation Act, and the Americans with Disabilities Act (ADA). These claims that PNC violated these statutes by failing to accommodate plaintiff are not part of his complaint. Plaintiff has not moved to amend his complaint nor has he presented the Court with a proposed amended

complaint setting forth these claim.  Nevertheless, in light of plaintiff's status as a *pro se* litigant, the Court will address those claims.

The Civil Rights Act provides in pertinent part that "[n]o person in the United States shall, on the ground of race, color, or national origin be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.  Here, plaintiff does not claim that PNC discriminated against him based upon race.  Nor has plaintiff alleged that PNC operates a program or activity receiving Federal financial assistance. Accordingly, plaintiff's allegations do not support a claim under this statute.

Plaintiff also makes a brief reference to the Rehabilitation Act, which provides in pertinent part:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a).  The Rehabilitation Act does not apply because plaintiff has not alleged that PNC receives Federal financial assistance.  Accordingly, plaintiff's allegations do not support a claim under this statute.

Finally, the ADA provides in pertinent part that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).  Here, plaintiff alleged that PNC refused to follow written instructions to pay the proceeds of a check made payable to him and give the funds to a third party

(his aide). The Court appreciates the fact that plaintiff has limitations which make it difficult for him to personally travel to a bank branch. However, plaintiff has not stated any facts to support a claim that PNC's refusal to cash the check was an act of discrimination against plaintiff "on the basis of disability." Accordingly, plaintiff's allegations do not support a claim under this statute.

### 3. Plaintiff's state law claim

#### a. Dismissal under 28 U.S.C. § 1367

As an initial matter, the Court need not address this claim if it adopts the recommendations to dismiss the federal claims. The Court exercised its supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367, presumably because that claim was related to the alleged § 1983 violation. *See* 28 U.S.C. § 1367(a) ("the district court shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form a part of the same case or controversy"). The dismissal of plaintiff's federal claim against defendant, however, requires the court to re-examine the issue of supplemental jurisdiction for state law claims against defendant. Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over a claim if the court "has dismissed all claims over which it has original jurisdiction." Thus, once a court has dismissed a plaintiff's federal claim, the court must determine whether to exercise, or not to exercise, its supplemental jurisdiction under § 1367. *See Campanella v. Commerce Exchange Bank*, 137 F.3d 885, 892-893 (6th Cir. 1998). As a general rule "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims." *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1254-1255 (6th Cir. 1996). Here, if the Court agrees that plaintiff's federal claim should be dismissed, there is no reason to retain supplemental jurisdiction over plaintiff's state law claim, and that claim should be dismissed.

### b. Theft by deception

In the alternative, while plaintiff's complaint attempts to allege a tort based on "theft by deception," he does not identify any crime in Michigan identified by that name or the elements of any such crime.  In this regard, it appears that no such claim exists under Michigan law.  *See People v. Jory*, 443 Mich. 403, 416, 505 N.W.2d 228 (1993) (noting that the Model Penal Code discusses "theft by deception" but does not identify any crime of that name in Michigan); *Lewis v. Northland Chrysler Dodge Ram Jeep*, No. 13-14058, 2014 WL 3375524, at *8 (E.D. Mich. May 27, 2014), R&R adopted in part, 2014 WL 3054563 (July 7, 2014) ("Plaintiff concedes that there is no claim for 'theft by deception' under Michigan law and thus, this claim need be discussed no further.").  Accordingly, plaintiff's state law claim should be dismissed.

## IV. RECOMMENDATION

For these reasons, I respectfully recommend that defendant's motion to dismiss (ECF No. 4) be **GRANTED**, that plaintiff's motion for entry of default judgment (ECF No. 6) be **DENIED**, and that this action be **DISMISSED**.


Dated:  November 19, 2018                           /s/ Ray Kent
                                                    United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).